IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 16, 2003

## LEON TERRELL PHILLIPS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 8330     Charles Lee, Judge**

_____

**No. M2002-02090-CCA-R3-PC - Filed May 19, 2004**

_____

The petitioner, Leon Terrell Phillips, pled guilty in the Bedford County Circuit Court to attempted first degree murder and received a sentence of thirty years incarceration in the Tennessee Department of Correction, which sentence was to be served at thirty percent. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel. The post-conviction court dismissed the petition, and the petitioner appeals. Finding no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Leon Terrell Phillips.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

The petitioner entered his guilty plea to attempted first degree murder on March 1, 1999. On February 29, 2000, he filed a petition for post-conviction relief, alleging ineffective assistance of counsel. Specifically, the petitioner alleged that counsel failed to advise him that if he went to trial on the indicted charge of especially aggravated robbery, a jury could consider the lesser-included offenses of the charged offense. The petitioner maintained that if he had been properly advised, he would not have pled guilty but would have proceeded to trial. Additionally, he contended that

counsel should have asked for a change of venue, citing the extensive publicity generated by the offense.[1]

On May 25, 2000, the post-conviction court conducted a hearing. Following the testimony of the petitioner, the post-conviction court granted the State's motion to dismiss the petition, concluding that the issue involved a question of law as to whether a lesser-included offense would have been charged if the petitioner had elected to proceed to trial. The post-conviction court, without making any findings of fact, concluded that the evidence would not have supported a charge on the lesser-included offenses and dismissed the petition.

The petitioner appealed the post-conviction court's decision. On appeal, this court noted that the post-conviction court, by dismissing the petition in the manner it did, rotely accredited the petitioner's testimony, thereby agreeing that the petitioner had proven prejudice. Leon Terrell Phillips v. State, No. M2000-02383-CCA-R3-PC, 2001 WL 717358, at *3 (Tenn. Crim. App. at Nashville, June 27, 2001). However, the post-conviction court's actions left open the question of the deficiency of counsel's performance. Id. Ultimately, this court concluded that the post-conviction court's ruling was based upon an inappropriate standard regarding the validity of the petitioner's guilty plea. Id. at *2. Accordingly, this court reversed the judgment of the post-conviction court and remanded for further evidentiary hearings and the entry of the appropriate findings of fact and conclusions of law. Id. at *3.

Following this court's remand, the post-conviction court conducted another evidentiary hearing. The post-conviction court, with the agreement of the petitioner and the State, allowed the transcript of the petitioner's testimony from his initial post-conviction hearing to be introduced into evidence. This court previously summarized the petitioner's testimony regarding the events surrounding the offense as follows:

> Mario Starnes asked the petitioner to help him rob a restaurant. The petitioner refused at first, but agreed to help after Starnes asked him again. They agreed that no one would be hurt, only bound with duct tape. However, the petitioner carried a loaded sawed-off shotgun and Starnes had a loaded pistol. They went to the restaurant at night in Starnes's sister's car and parked near the back door of the restaurant. The petitioner wore two sets of clothing, the outer consisting of dark colors. He also wore a toboggan with a pair of dark panty hose over his head, and Starnes wore a ski mask.
>
> After they entered the restaurant, Starnes went to get the money – appearing to know its location – while the petitioner was dealing with some employees. At some point, Starnes had shot into the ceiling. The petitioner made the employees sit on the floor, and

---

[1] This claim has been abandoned on appeal.

he told the victim's wife to approach. However, she went around a corner and returned with her husband, the victim. The victim approached the petitioner and pushed the shotgun away. He pushed the petitioner in the chest and screamed for him to leave. The victim pushed the petitioner out the back door.

The petitioner threw the shotgun down and left the property because he was "through" with it. He removed the toboggan and panty hose, crossed some bank property, and was headed toward a Wendy's restaurant when he looked back and saw Starnes and the victim outside. The petitioner heard or saw a shot or two. The petitioner obtained his share of the robbery proceeds several days later and spent some of it. After his arrest, the petitioner gave a tape-recorded statement of the events to the police.

The petitioner testified that his attorney told him that on the strength of the state's case, she believed that he would probably get a sentence of twenty-four to twenty-five years and serve eighty-five percent. She explained to him how he could be criminally responsible for Starnes's shooting the victim. He also admitted that they discussed the difference between especially aggravated robbery and aggravated robbery and that he told his attorney that he would accept aggravated robbery at eight to twelve years with a thirty-percent release eligibility date. The petitioner also acknowledged that his primary concern was getting a thirty-percent release eligibility date.

The petitioner testified that his attorney did not tell him that the jury could consider lesser included offenses, such as aggravated robbery. He said if he had known of such a possibility, he would have gone to trial. The petitioner agreed that at the guilty plea hearing, he had told the trial court that he had been satisfied with his attorney and had discussed all defenses and options with her. He explained, though, that he did not know at that time of her failure to discuss with him lesser included offenses in the context of a jury trial. Upon questioning at the evidentiary hearing by the trial court regarding the pretrial negotiations, the petitioner said that if the state had not offered a reduction he would have gone to trial, noting that it would, at least, cost the state the expense of a trial.

Id. at *2.

Trial counsel testified at the hearing following remand that she and the petitioner discussed at length the petitioner's options and what could happen at trial. Although counsel did not have an independent recollection of using the term lesser-included offense, she stated that they discussed what a jury might do and what a jury might convict the petitioner of under the facts of his case. On direct examination, the following colloquy occurred between the State and the petitioner's trial counsel:

> Q: Was there ever any discussion about whether a jury might convict him of the charge of aggravated robbery as opposed to especially aggravated robbery?
>
> A: Yes, I believe there was, yes. Yes, there was.
>
> Q: So was Mr. Phillips explained, and maybe didn't use the term lesser included offense, that a jury possibly would have the option of convicting him of some charge of less severe than the indicted charge of especially aggravated robbery?
>
> A: Yes, like I said earlier it was probably more in the context of when we were discussing trying to enter into a plea of aggravated robbery and it was in that context that, you know, we might be able to get the State to agree to this because there is a chance that you could be found guilty of aggravated robbery because he was not the shooter in this incident . . . .
>
> . . . .
>
> Q: Did you discuss with him if the State wasn't going to agree to it that that would be his only remaining option to get an aggravated robbery conviction would be at a jury trial?
>
> A: Yes.

Counsel recalled that the petitioner's primary concern was that he not plead to an offense that required him to serve eighty-five percent of his sentence. She explained that the parties agreed to allow the petitioner to plead guilty to attempted first degree murder and receive a sentence with a thirty percent release eligibility date in a "hybrid" type of plea.

Following the conclusion of the hearing, the post-conviction entered an order dismissing the petition. The post-conviction court made extensive findings of fact and conclusions of law. Specifically, the court found that trial counsel was an experienced trial attorney who investigated the State's case and discussed with the petitioner the various defenses which were available to him. The court accredited the testimony of counsel, finding that the petitioner was fully informed of the

-4-

options available to him if he proceeded to trial. The court found that the petitioner's testimony was not credible and that the petitioner had failed to prove his allegations by clear and convincing evidence. On appeal, the petitioner contests this ruling.

## II. Analysis

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In the instant case, the petitioner's trial counsel testified that she and the petitioner discussed the options available to him and the possible results if he proceeded to trial. The petitioner was aware of the distinctions in the proof required to find him guilty of especially aggravated robbery as opposed to aggravated robbery. After fruitless negotiations regarding a plea to aggravated robbery, counsel advised the petitioner that his only chance of obtaining an aggravated robbery conviction would be as a result of a jury trial. Counsel noted that the petitioner's primary concern was that he not receive a sentence that required him to serve eighty-five percent. Accordingly, counsel negotiated a plea agreement allowing the petitioner to plead guilty to attempted first degree murder, with his sentence to be served at thirty percent. The evidence, in our view, does not preponderate against the findings of the post-conviction court.

## III. Conclusion

Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-5-